ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING,<br><br>Parte Peticionaria<br><br>v.<br><br>ELBA GRISELLE LOZADA MERCADO<br><br>Parte Recurrida | TA2025CE00173 | *Certiorari,* procedente del Tribunal de Primera Instancia, Sala Superior de Loíza<br><br>Caso Núm.:<br><br>LO2024CV00208<br><br>Sala:403<br><br>Sobre:<br><br>Cobro De Dinero – Ordinario, Ejecución De Hipoteca: Propiedad Residencial |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de agosto de 2025.

Compareció ante este Tribunal la parte peticionaria, Newrez LLC D/B/A Shellpoint Mortgage Servicing (en adelante, el "Newrez" o "Peticionario), mediante recurso de *certiorari* presentado el 21 de julio de 2025. Nos solicitó la revocación de la *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 1 de julio de 2025, notificada y archivada en autos al día siguiente. Dicho dictamen fue objeto de una "**Moción de Reconsideración**", la cual fue declarada "No Ha Lugar" mediante *Resolución* del 9 de julio de 2025.

Por los fundamentos que expondremos a continuación, *expedimos* el auto de *certiorari* y *revocamos* la *Orden* recurrida.

### I.

El caso de epígrafe tuvo su génesis el 11 de diciembre de 2024, con la presentación de una "**Demanda**" por parte de Newrez en contra de la parte recurrida, Sra. Elba Griselle Lozada Mercado (en adelante, la "señora Lozada Mercado" o la Recurrida"), sobre cobro de dinero y ejecución de hipoteca. Mediante la misma, sostuvo que el 1 de agosto de 2001, la señora

Lozada Mercado suscribió cierto pagaré hipotecario a favor de Citibank, mediante el cual se le concedió un préstamo por la suma principal de $115,000.00, con un interés anual de 6.5% y fecha de vencimiento al 1 de agosto de 2031. Expresó que, adicional a ello, pactaron el pago de una suma equivalente al diez por ciento (10%) del principal para costas, gastos y honorarios de abogado en caso de reclamación por la vía judicial. Señaló que, en garantía de dicho pagaré, ese mismo día, la Recurrida otorgó la Escritura Núm. 242, suscrita ante el notario José E. Franco Gómez, mediante la cual se constituyó una hipoteca sobre el inmueble objeto de la presente controversia, el cual se describe de la siguiente manera:

> ---URBANA: Solar radicado en Estado Libre Asociado de Puerto Rico Urbanización Vistas del Océano, localizada en el Barrio Medianía Baja del término municipal de Loíza, Puerto Rico, que se describe en el plano de inscripción con el número, área y colindancias que de relacionan a continuación: Número del Solar: Diez (10) del Bloque "S" (S-10). Área del Solar: 275.00 metros cuadrados. En lindes por el NORTE, en una distancia de 12.50 metros lineales con los solares 5 y 4 del bloque "U" (U-5 y U-4); por el SUR, en una distancia de 12.50 metros lineales con la Calle Once (11); por el ESTE, en una distancia de 22.00 metros lineales, con el solar 9 del bloque "S" (S-9); y por el OESTE, en una distancia de 22.00 metros lineales, con el solar 11 del bloque "S" (S-11). Contiene una casa de concreto para fines residenciales. Se halla afecto este solar a Servidumbre Telefónica: Franja de terreno de 1.52 metros de ancho por 12.50 metros de largo, localizada en la colindancia Sur.-------------------------------------------------------------
>
> ---Inscrita al folio 71 del tomo 202 de Loíza, finca número 9620, Registro de la Propiedad de Puerto Rico, Sección Tercera de Carolina.[1]

De igual manera, mencionó que en el referido contrato se estipuló expresamente que el incumplimiento en el pago de una o más mensualidades de la hipoteca en cuestión, otorgaría al tenedor del pagaré el derecho de declarar vencida en su totalidad la deuda y ejercer su cobro por la vía judicial. Manifestó que la señora Lozada Mercado incumplió una o más de las obligaciones derivadas del pagaré, según modificado, al dejar de realizar los pagos pactados desde el 1 de marzo de 2024, pese a los avisos y oportunidades de cumplimiento que le fueron concedidos. Especificó que la Recurrida adeuda la suma de $29,228.52 de principal, más los intereses sobre dicha cantidad a razón de un 6.5% anual desde el 1 de

---

[1] *Véase*, SUMAC-TPI, entrada núm. 1.

febrero de 2024, los cuales se acumulan mensualmente hasta el saldo total de la deuda. Añadió que también se adeudan cargos por mora equivalentes al 5% de los pagos en atraso por más de quince (15) días calendario desde su fecha de vencimiento, acumulándose igualmente hasta el saldo final; las primas por seguro hipotecario y de riesgo; recargos por demora; créditos accesorios; adelantos realizados en virtud de la escritura de hipoteca, así como cualquier otra cantidad pactada en dicho instrumento. Señaló, además, que se reclaman $11,500.00 por concepto de gastos, costas y honorarios de abogado.

Afirmó que la Recurrida se obligó a pagar las contribuciones sobre la propiedad, así como otros cargos e imposiciones que le fueran atribuibles, por lo que debe ser compelida a efectuar dichos pagos o, en su defecto, a presentar la documentación que acredite su cumplimiento. Finalmente, arguyó que se realizaron gestiones para obtener el pago de las sumas reclamadas, las cuales resultaron infructuosas, por lo que no tuvo otra alternativa que reclamar su cobro por la vía judicial. En virtud de lo anterior, solicitó que se declarara "Con Lugar" la "**Demanda**".

En este contexto, el 4 de febrero de 2025, Newrez presentó una "**Moción Solicitando Anotación de Rebeldía y Sentencia**" alegando que, pese a haber transcurrido el término legal para que la Recurrida contestara las alegaciones, ésta no había presentado alegación responsiva alguna ni demostrado justa causa para su omisión. Indicó que efectuó múltiples gestiones de cobro para obtener las sumas reclamadas en la "**Demanda**" sin éxito, permaneciendo pendiente el pago de la totalidad de dichas cantidades, así como de los cánones vencidos y cargos por demora acumulados con posterioridad a su radicación. Añadió que, habiendo expirado el término legal de treinta (30) días para presentar su alegación responsiva, procedía la anotación de rebeldía contra la señora Lozada Mercado. Dicha solicitud fue declarada "No Ha Lugar" mediante *Orden* del 5 de febrero de 2025.

Más adelante, el 10 de febrero de 2025, el TPI emitió *una Orden de Referido al Centro de Mediación de Conflictos en Casos de Ejecución de*

*Hipotecas Por Videoconferencia,* mediante la cual dispuso el envío del caso al proceso de mediación compulsoria. El 21 de febrero de 2025, el Peticionario presentó una "**Moción de Reconsideración**" solicitando al Tribunal que dejara sin efecto el referido de mediación compulsoria. Específicamente, sostuvo que las disposiciones de la Ley Núm.184-2012, según enmendada, *infra*, no resultaban aplicables al presente caso, por cuanto la propiedad objeto de la controversia no constituye la residencia principal de la señora Lozada Mercado. En consecuencia, peticionó que se declarara "Ha Lugar" la referida moción. No obstante lo anterior, mediante *Resolución* emitida ese mismo día, el foro *a quo* declaró la solicitud "No Ha Lugar".

Posteriormente, el 26 de junio de 2025, el Centro de Mediación de Conflictos del foro de instancia presentó una "**Moción de Resultado y Cese de Notificaciones**" informando que las partes fueron referidas dicha dependencia. Expresó que la primera sesión de mediación fue programada para el 23 de mayo de 2025, a la cual la Recurrida no compareció. Añadió, además, que la segunda reunión se llevó a cabo el 18 de junio de 2025, con la comparecencia de ambas partes. Manifestó que, de la entrevista realizada a la señora Lozada Mercado surgió que ésta no reside en la propiedad objeto de la "**Demanda**". En atención a ello, el Centro de Mediación de Conflictos dio por concluida su intervención en el caso y solicitó al TPI su exclusión del registro de notificaciones.

El 30 de junio de 2025, Newrez presentó una "**Moción Reiterando Solicitud de Sentencia en Rebeldía**" en la que reiteró que la Recurrida no había presentado alegación responsiva alguna y solicitó nuevamente que se le anotara la rebeldía. Dicha petición fue declarada ""No Ha Lugar". El 1 de julio de 2025 y notificada al día siguiente, el TPI emitió una *Orden* en la que refirió nuevamente el caso al proceso de mediación. En detalle, determinó que lo procedente en derecho era que el acreedor informara al deudor que comparezca a la reunión las alternativas disponibles para conservar la propiedad, independientemente de si la propiedad constituía o no la residencia principal del deudor. Concluyó que, una vez emitida la

determinación judicial de referir el caso, carecía de pertinencia el hecho de que la propiedad esté o no ocupada. Asimismo, señaló que el Centro de Mediación no ostentaba jurisdicción para decidir sobre la procedencia del referido a mediación.

Asi las cosas, el 9 de julio de 2025, el Peticionario presentó una "**Moción de Reconsideración**" en la que reafirmó los planteamientos esbozados en su primera petición de reconsideración, enfatizando que la propiedad objeto de la presente controversia no constituía la residencia principal de la señora Lozada Mercado, por lo que no resultaban aplicables las disposiciones de la Ley Núm. 184-2012, según enmendada, *infra,* y por consiguiente, no procedía el referido al método alterno de resolución de disputas de que se trata. Finalmente, el 9 de julio de 2025, el TPI emitió una *Resolución Interlocutoria Sobre Solicitud de Reconsideración* en la que declaró "No Ha Lugar" la "**Moción de Reconsideración**".

Inconforme con lo anteriormente resuelto, el Peticionario acudió ante este Tribunal de Apelaciones mediante el recurso de epígrafe, en el que señaló la comisión del siguiente error:

> **ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REFERIR POR SEGUNDA OCASIÓN EL CASO AL PROCESO DE MEDIACIÓN COMPULSORIA CUANDO LA PROPIEDAD OBJETO DE EJECUCIÓN NO ES LA RESIDENCIA PRINCIPAL DE LA PARTE DEMANDADA.**

El 12 de agosto de 2025, Newrez presentó una "**Moción para que se disponga de Recurso**" puesto que la Recurrida no había comparecido ante este Tribunal para oponerse al recurso. Sobre el particular, notamos que la señora Lozada Mercado no ha presentado alegación responsiva o se ha defendido de forma alguna ante el foro de instancia.

En vista de lo anterior, procedemos a resolver.

**II.**

La Asamblea Legislativa adoptó la Ley Núm. 184-2012, según enmendada, mejor conocida como la "Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal", con el fin ulterior de proteger la residencia principal de los deudores hipotecarios ante los efectos de la crisis económica en

Puerto Rico suscitada en los años 2007 al 2009. Scotiabank de Puerto Rico v. SLG Rosario-Castro, 205 DPR 537, 547 (2020). Ésta dispone para un procedimiento de mediación compulsoria, previo a que se concrete un proceso de ejecución de hipoteca sobre dicha residencia principal, mediante el cual se le informará al deudor aquellos remedios alternativos disponibles para mantener el bien inmueble de que se trate. Oriental Bank v. Caballero García, 212 DPR 671, 682 (2023). Todo ello con el propósito de "evitar la pérdida de su residencia principal y, a su vez, le provee la oportunidad de sentarse a negociar con su acreedor". Bco. Santander v. Correa García, 196 DPR 452, 461 (2016).

Aunque en su Exposición de Motivos la Ley de Mediación dispone que se entenderá que propiedad principal de vivienda es aquella que se usa como hogar principal, no *second home*, el referido estatuto también la define como "aquella que se utiliza como el hogar principal del deudor o del deudor y su familia inmediata; y que para fines contributivos sobre bienes inmuebles es aquella para la cual aplicaría la exención contributiva principal". Art. 2 (e) de la Ley Núm. 184-2012, 32 LPRA sec. 2881 (e).

En cuanto a la reunión compulsoria de mediación, el estatuto establece que la misma se celebrará en los casos en que un acreedor hipotecario vaya a iniciar un pleito de cobro de dinero y ejecución de hipoteca que pueda resultar en la venta judicial "**de una propiedad residencial que constituya una vivienda principal**". Franklin Credit v. George Riviello, 209 DPR 555, 564 (2022) (énfasis suplido). Durante dicho cónclave, el acreedor hipotecario deberá notificarle al deudor "todas las alternativas disponibles en el mercado para evitar la ejecución de la hipoteca o la venta judicial de una propiedad residencial que constituya una vivienda principal". Art. 2 (b) de la Ley Núm. 184-2012, 32 LPRA sec. 2881(b). Entiéndase, "una propiedad principal que constituya una vivienda personal del deudor". Franklin Credit v. George Riviello, *supra*, pág. 565. Finalmente, la ley puntualiza que "[el] propósito u objetivo será poder llegar a un acuerdo o modificación que permita al deudor hipotecario establecer un acuerdo de pago u otra alternativa satisfactoria a las partes y **no perder su vivienda**

**principal**". Artículo 2 (b) de la Ley Núm. 184-2012, 32 LPRA sec. 2881 (b) (énfasis suplido).

Nuestro más alto foro determinó en Bco. Santander v. Correa García, *supra*, pág. 463, que el acto de citar a una sesión de mediación es un requisito jurisdiccional que el tribunal debe cumplir **en aquellos casos en los que un acreedor solicite la ejecución de la vivienda principal de un deudor**. En vista de ello, y en los casos que aplique, es obligación del tribunal referir el caso a mediación, pues de no hacerlo "no podrá dictarse Sentencia ni ordenarse la venta judicial del inmueble que se utiliza como residencia principal". Íd. Entiéndase que, cualquier sentencia dictada u orden de venta judicial emitida en contravención con lo establecido en la Ley Núm. 184-2012, *supra*, será nula y carecerá de efecto legal. Íd., pág. 472.

**III.**

En el presente caso, el Peticionario nos solicitó la revocación de la *Orden* del TPI en la que se refirió la controversia de autos al proceso de mediación provisto en la Ley Núm. 184-2012, *supra*.

Como único señalamiento de error, Newrez plantea que el TPI erró al referir por segunda ocasión el caso al proceso de mediación compulsoria cuando la propiedad objeto de ejecución no es la residencia principal de la señora Lozada Mercado. Le asiste la razón. Veamos.

Del expediente que obra ante nuestra consideración se desprende que el 11 de diciembre de 2024 Newrez presentó una "**Demanda**" contra la señora Lozada Mercado sobre cobro de dinero y ejecución de hipoteca, respecto a una propiedad sita en el Barrio Medianía Baja del término municipal de Loíza. Tras varias incidencias procesales, el 10 de febrero de 2015, el TPI refirió el caso al proceso de mediación compulsoria. En la primera cita de mediación, la Recurrida se ausentó. La segunda sesión de mediación se celebró el 18 de junio de 2025, con la comparecencia de ambas partes. **Según consta en el expediente y de conformidad con las disposiciones del Artículo 3 de la Ley Núm. 184-2012***, supra,* **el Centro**

**de Mediación informó que, en dicha ocasión, la Recurrida manifestó que no residía en la propiedad objeto de la presente controversia.**[2]

Lo anterior provocó que el Centro de Mediación de Conflictos diera por terminada su intervención en el caso y devolviera la controversia al TPI. En dicha comparecencia, se le apercibió al foro de instancia sobre lo resuelto por el Tribunal Supremo en Franklin Credit v. George Riviello, *supra*, a los efectos de que el mecanismo de mediación compulsoria solo aplica cuando la propiedad por ejecutarse constituye la residencia principal del demandado. No obstante lo anterior, el 1 de julio de 2025, el TPI volvió a remitir el pleito al proceso de mediación, fundamentando su determinación en que el acreedor debe informar al deudor sobre las alternativas disponibles para conservar la propiedad, independientemente de que ésta constituya o no su residencia principal.

Conforme adelantáramos en los acápites anteriores, la Ley Núm. 184-2012, *supra*, se promulgó con el objetivo específico de salvaguardar la **residencia principal** de los deudores hipotecarios frente a los efectos de la crisis económica en Puerto Rico. **La misma establece un procedimiento de mediación compulsoria aplicable únicamente antes de que se lleve a cabo un proceso de ejecución de hipoteca sobre dicha propiedad principal, en el cual se le informará al deudor los remedios alternativos disponibles para conservar ese bien inmueble**. Oriental Bank v. Caballero García, *supra*, pág. 682. Ello, con el fin ulterior de prevenir la pérdida de la residencia principal del deudor y, a la vez, brindarle la oportunidad de dialogar con su acreedor. Bco. Santander v. Correa García, *supra*, pág. 461.

Tras un análisis minucioso del expediente ante nuestra consideración, hemos arribado a la conclusión de que no procedía el referido del presente caso –por segunda ocasión– al procedimiento de mediación compulsoria dispuesto en la Ley Núm. 184-2012, *supra*. Nos explicamos.

---

[2] *Véase*, SUMAC-TPI, entrada núm. 22.

Tal como se indicó anteriormente, de la segunda comparecencia de la Recurrida a la reunión de mediación se desprende, sin lugar a dudas, que la propiedad ubicada en el Municipio de Loíza, objeto de la presente controversia, no constituye su residencia principal. En virtud de ello, el Centro de Mediación obró correctamente al devolver el caso al foro de instancia. No obstante lo anterior, el foro *a quo* resolvió que resultaba irrelevante si la propiedad estaba o no ocupada por la deudora, esto es, si constituía o no su hogar habitual.

Esta determinación no puede ser avalada, toda vez que la legislación aplicable y la jurisprudencia que la interpreta disponen, de manera expresa, que el método alterno de resolución de disputas compulsorio a casos de cobro de dinero y ejecución de hipoteca **es procedente exclusivamente en aquellas instancias en las que se persiga la ejecución de la residencia principal del deudor**. Tal limitación se desprende claramente de la exposición de motivos y de los Artículo 2 y 3 de la referida pieza legislativa, de los cuales se colige que su promulgación obedeció a la necesidad de atender la insuficiencia de recursos económicos de los ciudadanos de Puerto Rico para adquirir o conservar su vivienda principal.

Por consiguiente, resulta jurídicamente improcedente sostener que el presente asunto deba ser referido al proceso de mediación, cuando no existe controversia respecto a que la propiedad no es la residencia principal de la señora Lozada Mercado y que la Ley Núm. 184-2012, *supra*, no tiene aplicación a las llamadas "*second homes*". En otras palabras, aquellas propiedades que no se utilicen como morada principal por parte del deudor hipotecario quedan fuera de su ámbito de protección y, por consiguiente, no cualifican para el procedimiento de mediación compulsoria que la misma establece. Resolver lo contrario, implicaría distorsionar el propósito legislativo y extender indebidamente el alcance de la ley a supuestos no contemplados por el legislador.

Sobre lo anterior, debemos hacer hincapié en que nada impide que la Recurrida pueda ejercer cualquier derecho que le reconozca la ley federal, a los fines de que el acreedor hipotecario de epígrafe tenga que ofrecerle

las alternativas disponibles en el mercado para retener el inmueble. Sin embargo, no se puede utilizar como fundamento para ello las disposiciones de la Ley Núm. 184-2012, *supra*, pues interpretarlo de esa forma equivaldría a trastocar los poderes que la Constitución de Puerto Rico le delegó exclusivamente a la Asamblea Legislativa.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *expedimos* el auto de *certiorari* y *revocamos* la *Orden* recurrida, pues al presente pleito no le es de aplicación el proceso de mediación compulsoria que dispone la Ley Núm. 184-2012, *supra*, toda vez que la propiedad en controversia no es la residencia principal de la señora Lozada Mercado.

Se devuelve el caso al TPI para la continuación de los procedimientos consistentes con lo aquí resuelto.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones